UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| CHRISTOPHER L. SCRUGGS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 2:19-cv-00096-JMS-MJD |
| | ) | |
| DAVIS Sgt., | ) | |
| HORN Sgt., | ) | |
| COBB Sgt., | ) | |
| R. BROWN Warden, | ) | |
| C. NICHOLSON Lieutenant, | ) | |
| DUNN Correctional Officer, | ) | |
| JERRY SNYDER Unit Team Manager, | ) | |
| ROGERS Correctional Officer, | ) | |
| BOATMAN Correctional Officer, | ) | |
| | ) | |
| Defendants. | ) | |

**Order Granting Defendants' Motion
for Partial Summary Judgment**

Christopher L. Scruggs, an Indiana Department of Correction (IDOC) inmate incarcerated at the Wabash Valley Correctional Facility, filed this 42 U.S.C. § 1983 action on February 22, 2019, against nine IDOC employees and a medical provider. Dkt. 2. The suit flows from incidents on August 9, 2018, to be described in brief detail below. On December 28, 2020, the Court granted the motion for summary judgment of defendant Hanna Boyd, R.N. Dkt. 138. Remaining are the nine IDOC defendants who have also moved for partial summary judgment. The motion is fully briefed and ready for a decision. For the reasons explained below, the motion, dkt. [95], is **granted**.

**I. Summary Judgment Standard**

A motion for summary judgment asks the court to find that a trial is unnecessary because there is no genuine dispute as to any material fact and, instead, the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). On summary judgment, a party must show the court

what evidence it has that would convince a trier of fact to accept its version of the events. *Gekas v. Vasilades*, 814 F.3d 890, 896 (7th Cir. 2016). The moving party is entitled to summary judgment if no reasonable fact-finder could return a verdict for the non-moving party. *Nelson v. Miller*, 570 F.3d 868, 875 (7th Cir. 2009). To survive a motion for summary judgment, the non-moving party must set forth specific, admissible evidence showing that there is a material issue for trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The court views the record in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor. *Skiba v. Illinois Cent. R.R. Co.*, 884 F.3d 708, 717 (7th Cir. 2018). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the fact-finder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court need only consider the cited materials, Fed. R. Civ. P. 56(c)(3), and the Seventh Circuit Court of Appeals has repeatedly assured the district courts that they are not required to "scour every inch of the record" for evidence that is potentially relevant to the summary judgment motion before them. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017). The non-moving party bears the burden of specifically identifying the relevant evidence of record. *D.Z. v. Buell*, 796 F.3d 749, 756 (7th Cir. 2015). This is in part because summary judgment is the "put up or shut up" moment in a lawsuit. *Grant*, 870 F.3d at 568.

## II. Material Facts

Consistent with the legal standards set out above, the following facts are undisputed except where noted. *Whitaker v. Milwaukee Cnty.*, 772 F.3d 802, 808 (7th Cir. 2014). That is, these statements of fact are not necessarily objectively true, but as the summary judgment standard requires, the undisputed facts and any disputed evidence are presented in the light most favorable

to the non-moving party. *Whitaker v. Wisc. Dep't of Health Serv's,* 849 F.3d 681, 683 (7th Cir. 2017).

The task of determining which facts are undisputed is complicated by Mr. Scruggs taking issue with obscure and irrelevant differences between his deposition testimony, interrogatory responses, and documentary evidence. *See, e.g.,* dkt. 129 at 3-4 (Scruggs' response taking issue with the definition or degree of what constitutes "the water wasn't working.") Any disagreement from Mr. Scruggs as to the precise wording of these material facts is a disagreement that does not materially impact to the issues.

Mr. Scruggs was, at the relevant time, incarcerated at the Wabash Valley Correctional Facility. Dkt. 91-5 at 10 (Scruggs' deposition).[1] On August 9, 2018, Mr. Scruggs was on the thirty-third day of a hunger strike. *Id.* at 10, 14. On that day he was moved to cell B-612, which is in the "SCU/WVS" of the Wabash Valley Correctional Facility. Dkt. 95-1 at 12; dkt. 95-3 at 1-2. Mr. Scruggs soon noticed that the water in the sink was not working properly. Dkt. 91-5 at 24. The hot water was not working at all, and the cold water "would just run on the faucet like water on a window pane or something." *Id.* at 24-25. Mr. Scruggs said there were no other sources of water in his cell than the toilet, which was working properly, but he was "not drinking from no toilet . . . ." *Id.* at 25.

Later the same day, Sgt. Horn came to Mr. Scruggs' cell after being told by Officer Dunn that Mr. Scruggs was "unresponsive on the floor." Dkt. 95-4 at 1. Mr. Scruggs was taken to the medical area, and once there and while waiting for the nurse, he asked for and received two six-

---

[1] Mr. Scruggs' deposition was taken February 4, 2020, by counsel for all defendants. A copy was filed in support of Defendant Boyd's motion for summary judgment and is cited by the IDOC defendants. Page citations to every filed document, including exhibits such as Mr. Scruggs' deposition, are to the CM/ECF assigned page numbers.

3

ounce cups of water. Dkt. 91-5 at 40-41. At approximately 6:45 p.m., Mr. Scruggs was seen by Nurse Hanna Boyd and then returned to cell B-612. Dkt. 91-2; dkt. 91-5 at 97. Mr. Scruggs was placed on suicide watch at approximately 7:05 p.m. Dkt. 91-3.

Shortly after returning to B-612, Mr. Scruggs was temporarily moved to a holding cell that was being used as a room for offenders on suicide watch. Dkt. 91-5 at 61-62. Mr. Scruggs had spent approximately a total of six to seven hours in cell B-612. Dkt. 2 at 4. The water worked properly in the holding cell. Dkt. 91-5 at 83.

When Mr. Scruggs was no longer on suicide watch, he was returned to cell B-612. Dkt. 91-5 at 83. The water still did not work properly in B-612, but correctional officers brought him water when he asked. *Id.*

### III. Claims in This Lawsuit

After screening pursuant to 28 U.S.C. § 1915A and summary judgment for Nurse Boyd, Mr. Scruggs has three claims remaining in this action:

1. First Amendment Retaliation Claim

    Mr. Scruggs asserts his move to cell B-612 was ordered or caused by Warden Richard Brown, Lt. Christopher Nicholson, and/or Unit Team Manager Jerry Snyder in retaliation for his having filed another lawsuit (*Scruggs v. Wilson*, No. 2:19-cv-00228 (S.D. Ind. 2019).

2. Eighth Amendment Condition of Confinement Claim

    Mr. Scruggs asserts that the six to seven hours he spent in cell B-612 without drinkable running water violated his Eighth Amendment right to be free of cruel and unusual punishment. He brings this claim against all nine of the remaining defendants – Correctional Officer Stephen Boatman, Sgt. Jodi Davis, Sgt. Tim Horn, Sgt. Tracy Cobb, Warden Richard Brown, Lt. Christopher Nicholson, Correctional Officer Jeanne Dunn, Unit Team Manager Jerry Snyder, and Correctional Officer Blayze Rodgers. (this list includes the three defendants from the first claim), alleging they all knew cell B-612 did not have drinkable water and did nothing about it.

3. Eighth Amendment Excessive Force and Deliberate Indifference Claim

Mr. Scruggs asserts that Sergeant Jodi Davis sprayed his genitals with two large cans of pepper spray, and that she and Sergeant Tim Horn then took him to a decontamination shower in handcuffs and would not help him turn on the water. These two defendants are not seeking summary judgment on this claim.

### IV. Officer Boatman

Officer Boatman moves for summary judgment because Mr. Scruggs has made no allegation against him. Mr. Scruggs indeed testified during his deposition that he erroneously sued Officer Boatman, mistaking him for someone else. Dkt. 91-5 at 36. In his response, Mr. Scruggs agrees and states that Officer Boatman is entitled to summary judgment. Dkt. 129 at 5. Accordingly, Officer Boatman's motion for summary judgment is **granted**. All claims against him are **dismissed with prejudice**.

### V. First Amendment Retaliation Claim

The threshold, and dispositive, issue for this claim concerns the defendants' personal responsibility. Mr. Scruggs pled a claim against Warden Brown, Lt. Nicholson, and Manager Snyder for retaliation that survived screening under 28 U.S.C. § 1915A. *See* dkt. 6. Now at the summary judgment stage, after discovery has concluded, Mr. Scruggs must adduce *evidence* that these defendants were responsible for his move to cell B-612 and that they knew the drinking water in the cell was not working properly. He has not done so.

"Individual liability under § 1983 . . . requires personal involvement in the alleged constitutional deprivation." *Colbert v. City of Chi.*, 851 F.3d 649, 657 (7th Cir. 2017) (internal quotation omitted) (citing *Wolf-Lillie v. Sonquist*, 699 F.2d 864, 869 (7th Cir. 1983) ("Section 1983 creates a cause of action based on personal liability and predicated upon fault. An individual cannot be held liable in a § 1983 action unless he caused or participated in an alleged constitutional

5

deprivation. . . . . A causal connection, or an affirmative link, between the misconduct complained of and the official sued is necessary."))

Mr. Scruggs' arguments that Warden Brown, Lt. Nicholson, and Manager Snyder were responsible for the move to B-612 are mere speculation and conjecture. At his deposition, this exchange occurred:

> Q. Do you know who decided for you to move?
>
> A. Well, Snyder is in charge of the caseworkers in each unit, so he handles movements. Brown, he's superintendent, so he has to approve the movements, and I know Nicholson has something to do with it too.
>
> . . . .
>
> Q. Do you know what Nicholson had to do with it?
>
> A. No. He's just the lieutenant over the SHU, so he handles movements, too. That's part of his job.

Dkt. 91-5 at 17. Mr. Scruggs went on to testify that he never had communications with any of these three defendants about his move from "A end" to "B end." *Id.*

The unrebutted interrogatory testimony of Warden Brown is that he is "not involved in the bed movement of offenders." Dkt. 95-2 at 1-2. Lt. Nicholson's unrebutted interrogatory testimony is that he did not make the decision to move Mr. Scruggs from the A-500 range to the B-600 range on August 9, 2018. Dkt. 95-1 at 1. Manager Snyder's unrebutted interrogatory testimony is that the IDOC Central Office approved Mr. Scruggs' move back to SCU/WVS, and he does not admit or deny being responsible for the move. Dkt. 95-3 at 1-2.

Mr. Scruggs also argues that several emails between officials are evidence that Lt. Nicholson was involved in the decision to move him to B-612. *See, e.g.,* dkt. 129 at 9, ¶ 5. He does not point to nor quote any particular email. *Id.* The Court declines to hunt for emails among those submitted by Mr. Scruggs that could support his allegations. "Judges are not like pigs,

6

hunting for truffles buried in" the record. *Albrechtsen v. Bd. of Regents*, 309 F.3d 433, 436 (7th Cir. 2002) (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991). However, the Court has conducted a brief review of the emails and does not find any discussion that even remotely supports Mr. Scruggs' argument. Dkt. 125 at 4-54. To the contrary, the emails suggest a concern for Mr. Scruggs' well-being during his hunger strike, reporting number of meals that were missed, weight checks, and what efforts were made to convince him to stop his hunger strike. *Id.*

The evidence most indicative of who may have directed Mr. Scruggs' move to cell B-612 is the bed movement log, dkt. 95-1 at 12, showing that Sgt. Brock entered the bed move to B-612, and it was approved by M. Woolsey. Neither are defendants to this action.

In the end, Mr. Scruggs has failed to produce admissible evidence to support his belief that Warden Brown, Lt. Nicholson, or Manager Snyder directed or were responsible for his move to B-612. Moreover, he has produced no evidence that any of the three knew that the cell's drinking water was not sufficiently operating. Although the Court draws inferences in favor of Mr. Scruggs, "our favor toward the nonmoving party does not extend to drawing inferences that are supported by only speculation or conjecture." *Estate of Biegert by Biegert v. Molitor*, 968 F.3d 693, 701 (7th Cir. 2020) (internal quotation omitted); *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 573 (7th Cir. 2021) ("[S]peculation is not sufficient to survive summary judgment; there must be evidence.") (internal quotation omitted).

As Mr. Scruggs has no evidence of their personal responsibility, Warden Brown, Lt. Nicholson, and Manager Snyder's motion for summary judgment on the First Amendment retaliation claim is **granted**.

## VI.  Eighth Amendment Conditions of Confinement

With Officer Boatman's dismissal, the eight remaining defendants are accused by Mr. Scruggs of violating his Eighth Amendment right to not be subjected to cruel and unusual punishment. He argues that being placed in cell B-612 for six to seven hours, in his weakened state due to his thirty-three-day hunger strike, without adequate drinkable water, was cruel and unusual. The defendants, Sgt. Jodi Davis, Sgt. Tim Horn, Sgt. Tracy Cobb, Warden Richard Brown, Lt. Christopher Nicholson, Correctional Officer Jeanne Dunn, Unit Team Manager Jerry Snyder, and Correctional Officer Blayze Rodgers seek summary judgment, arguing that (1) being in a cell without running water for six to seven hours is not a sufficiently serious harm to implicate the Eighth Amendment protections, (b) there is no evidence that any of the defendants acted with the subjective intent required to prove an Eighth Amendment violation because none knew that Mr. Scruggs faced a substantial risk of serious harm and were deliberately indifferent to it, and (c) they are entitled to qualified immunity because there is no clearly established law that either requires running water in a prison cell or that being denied access to running water for six to seven hours violates the Constitution. Dkt. 96 at 9-15. The Court will address only the qualified immunity defense because it is dispositive.

Qualified immunity protects government officials from liability for civil damages unless their conduct violates "clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009); *see also Burritt v. Ditlefsen*, 807 F.3d 239, 249 (7th Cir. 2015). In other words, a defendant is entitled to "qualified immunity and is not liable . . . unless he has violated a 'clearly established' right, such that 'it would [have been] clear to a reasonable officer that his conduct was unlawful . . . .'" *Kingsley v. Hendrickson*, 135 S. Ct. 2466, 2474 (2015) (quoting *Saucier v. Katz*, 533 U.S. 194, 202 (2001)).

Analysis of the qualified immunity defense requires a consideration of: (1) whether the plaintiff's constitutional rights were violated and (2) whether the rights were clearly established at the time. *Saucier*, 533 U.S. at 201-02.

Mr. Scruggs bears the burden of demonstrating the violation of a clearly established right. *Hernandez ex rel. Hernandez v. Foster*, 657 F.3d 463, 473 (7th Cir. 2011); *Forman v. Richmond Police Dep't.*, 104 F.3d 950, 957–958 (7th Cir. 1997). A violation is only "clearly established where: (1) a closely analogous case establishes that the conduct is unconstitutional; or (2) the violation is so obvious that a reasonable state actor would know that his actions violated the Constitution." *Siebert v. Severino*, 256 F.3d 648, 654–55 (7th Cir. 2001). In *Plumhoff v. Rickard*, the Supreme Court held that "a defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." 572 U.S. 765, 778-779 (2014). As to the latter prong of Mr. Scruggs' burden, it is not necessary for him to rely on a case directly on point, but "existing precedent must have placed the statutory or constitutional question beyond debate." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (per curiam).

"'Qualified immunity gives government officials breathing room to make reasonable but mistaken judgments,' and protects 'all but the plainly incompetent or those who knowingly violate the law.'" *Id.* (quoting *Ashcroft v. al–Kidd*, 563 U.S. 731, 743 (2011) (in turn quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Mr. Scruggs has not responded with authority to meet his burden. He cites to *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996), but this case deals with qualified immunity on a retaliation claim, not water in a prison cell. 102 F.3d at 276. He also cites to *Henderson v. Sheahan*, 196 F.3d 839, 845 (7th Cir. 1999), which reiterates that jail and prison officials have a duty to provide

9

humane conditions of confinement. Dkt. 129 at 21. There is no dispute that Mr. Scruggs is entitled to humane conditions of confinement, but *Henderson* does not address whether a poorly working water faucet that is impractical to drink from for six to seven hours violates the Constitution. Lastly, Mr. Scruggs appears to argue that the defendants' conduct of leaving him in cell B-612 without an adequate drinking water supply is clearly unlawful because all humans need water to live. *Id.*

There is no question that water is a necessity and its deprivation could constitute an Eighth Amendment violation. But Mr. Scruggs cites to no authorities holding that a prison cell without sufficient running water for drinking, for six to seven hours, is such a violation. The defendants argue that Mr. Scruggs would have been given drinking water if he had asked, and while in cell B-612 he did not. Dkt. 96 at 14. He asked for water while waiting to see the nurse and was provided two cups of water then. Mr. Scruggs has not argued that he asked for water but was refused, either in cell B-612 or any other place.

The authorities in this Circuit, as well as other circuits, assess the deprivation of water in terms of days and in combination with other factors, such as unflushed toilets, human waste on the floor or walls, and denial of cleaning supplies. *See Hardeman v. Curran*, 933 F.3d 816, 821 (7th Cir. 2019) (addressing the deprivation of water for three days in a pretrial detainee facility and collecting cases). In *Hardeman*, the court noted that the question in deprivation of water cases was "whether the *severity and duration* of the conditions . . . were so significant that . . . they violated the Constitution." *Id.* at 824 (emphasis added).

Again, Mr. Scruggs cites to no authorities to demonstrate that the deprivation of *running* water for six to seven hours is a clearly established violation of the Eighth Amendment or that it is so egregious that the officers knew their actions violated the Constitution. The authorities noted

in *Hardeman* strongly suggest otherwise. *Id.* at 821 (citing *Woods v. Thieret*, 903 F.3d 1080, 1082 (7th Cir. 1990) (three days without food and water stated an Eighth Amendment claim); *Johnson v. Pelker*, 891 F.3d 126, 139 (7th Cir. 1989) (three days without running water, feces on walls, and denial of cleaning supplies stated Eighth Amendment claim); *Dellis v. Corr. Corp. of Am.*, 257 F.3d 508, 512 (6th Cir. 2001) (one bottle of water and one pint of milk per day for three days stated an Eighth Amendment claim); and *Johnson v. Lewis*, 217 F.3d 726, 732 (9th Cir. 2000) (inadequate drinking water, along with other deprivations, for four days stated an Eighth Amendment claim).

In light of these established authorities, and the absence of cases holding that the deprivation of running water for six to seven hours could state an Eighth Amendment claim, this Court finds that there is no clearly established law providing notice to the defendants that their conduct could violate the Constitution. The Court also finds that the deprivation of running water for this short time period was not so egregious that any officer involved in this conduct would understand that she is violating the Constitution.

For these reasons, the remaining eight defendants are entitled to qualified immunity. *See Pearson*, 555 U.S. at 236 (district court may bypass question of whether a constitutional violation occurred and address the "clearly established" prong first). Their motion for summary judgment is **granted** and Mr. Scruggs' Eighth Amendment conditions of confinement claims concerning the conditions of cell B-612 are **dismissed** with prejudice.

### VII. Surviving Claims Against Sgt. Davis and Sgt. Horn

In his complaint, Mr. Scruggs alleged that near the end of his time in B-612, Sgt. Davis sprayed him on his genitals with "two big cans of pepper spray." He was then taken to the shower for decontamination. His hands were handcuffed behind his back and he could not turn on the shower water. Sgt. Davis and Sgt. Horn told him to "figure it out" by himself. Dkt. 2 at 7. These

defendants did not seek summary judgment on these claims and they will therefore be resolved by settlement or trial.

## VIII. Conclusion

For the reasons explained above, the defendants' motion for partial summary judgment, dkt. [95], is **granted**. All claims are **dismissed** with prejudice against defendant Correctional Officer Stephen Boatman. The **clerk is directed** to terminate Officer Boatman from the docket. The First Amendment retaliation claims against Warden Richard Brown, Lt. Christopher Nicholson, and Unit Team Manager Jerry Snyder are **dismissed** with prejudice. The Eighth Amendment conditions of confinement claims concerning the water in cell B-612 are **dismissed** with prejudice against Sgt. Jodi Davis, Sgt. Tim Horn, Sgt. Tracy Cobb, Warden Richard Brown, Lt. Christopher Nicholson, Correctional Officer Jeanne Dunn, Unit Team Manager Jerry Snyder, Correctional Officer Blayze Rodgers as barred by the doctrine of qualified immunity. The **clerk is directed** to terminate Sgt. Tracy Cobb, Warden Richard Brown, Lt. Christopher Nicholson, Correctional Officer Jeanne Dunn, Unit Team Manager Jerry Snyder, and Correctional Officer Blayze Rodgers from the docket.

Mr. Scruggs' Eighth Amendment excessive force claim remains against defendants Sgt. Jodi Davis and Sgt. Tim Horn. A trial date will be set by separate order.

No partial final judgment is necessary at this time.

**IT IS SO ORDERED**.

Date: 3/25/2021

Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

Distribution:

Christopher L. Scruggs
957096
Wabash Valley Correctional Facility - Inmate Mail/Parcels
Electronic Service Participant – Court Only

Archer Riddick Randall Rose
Indiana Attorney General
archer.rose@atg.in.gov